CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
4/17/2025
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 6:06-cr-00025 |
| v. | **MEMORANDUM OPINION** |
| VINCENT EDWARD TURPIN, | JUDGE NORMAN K. MOON |
| *Defendant.* | |

Pursuant to 18 U.S.C. § 3582(c)(1)(A), Defendant Vincent Edward Turpin moves to reduce his federal sentence on an unlawful possession of a firearm offense to time served. However, because he has not provided "extraordinary and compelling reasons" for such a reduction, his motion is denied.

**I. BACKGROUND**

On August 17, 2006, a federal grand jury indicted the Defendant for charges of distributing a measurable quantity of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count One) and possessing a firearm after being convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count Two). Dkt. 3. The Defendant pled guilty to Count Two.[1] Dkts. 34-36. On March 5, 2008, the Court entered judgment, sentencing the Defendant to 180 months of incarceration – the mandatory minimum for the offense – followed by four years of supervised release. Dkt. 48; Dkt. 109 at ¶ 44.

---

[1] Pursuant to the plea agreement, Count One was dismissed. Dkts. 34-35.

1

The Defendant started his federal sentence in December 2015 after finishing a state sentence. Dkt. 112 at 2. He is currently incarcerated at FCI Butner Low in North Carolina and has a projected release date of October 10, 2027. Dkt. 103 at 4; *Find an inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last accessed Apr. 16, 2025).

In 2020, the Defendant filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a) and the Federal Public Defender filed a supplemental compassionate release motion shortly thereafter. These motions argued that the defendant's medical conditions[2] placed him at high risk of severe complications from the COVID-19 virus, but the Court found that the defendant's vaccination status "remove[d] his medical conditions from the category of risk constituting an 'extraordinary and compelling' circumstance to consider compassionate release." Dkt. 96 at 5. Accordingly, the Court denied the motions. *Id*.

The Defendant, represented by counsel, now brings a new motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 103. He specifically contends that four factors rise to the level of "extraordinary and compelling reasons" that warrant reducing his federal sentence to time served and imposing a condition of home confinement for the remaining portion of his sentence. *Id*. at 1. These are: (1) his various health conditions; (2) his wife's deteriorating health; (3) the amount of time he has been incarcerated (for state and federal sentences) served paired with "punitive" COVID 19-related conditions; and (4) his efforts at rehabilitation. *Id*. at 1-2. The Government, however, opposes the Defendant's motion on the grounds that he fails to provide extraordinary and compelling reasons for a sentence reduction and that the factors enumerated in 18 U.S.C. § 3553 weigh against his release. Dkt. 112.

## II. LEGAL STANDARDS

---

[2] Medical conditions raised in these motions included his obesity, hypertension, and Type II diabetes. Dkt. 96 at 4.

A court generally may not modify a term of imprisonment once the court has imposed sentence. 18 U.S.C. § 3582(c); *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021) (noting "the default position stated in 18 U.S.C. § 3582(c) is that a sentencing court 'may not modify a term of imprisonment once it has been imposed'"). However, a statutory exception under § 3582(c)(1)(A), known as compassionate release, allows the court, on a defendant's motion, to reduce the term of imprisonment if the "court . . . finds that . . . extraordinary and compelling reasons warrant such a reduction," the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and the § 3553(a) sentencing factors merit a reduction. *U.S. v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020) (citing § 3582(c)(1)(A)). To make such a motion, the defendant must have first asked the Bureau of Prisons ("BOP") for compassionate release and fully exhausted administrative appeals following BOP's denial of the request. 18 U.S.C. § 3582(c)(1)(A)(i).

Accordingly, a court's evaluation of a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) involves three discrete steps. First, the court must have the authority to rule on the motion. The petitioner must either (1) have "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the [petitioner's] behalf," or (2) wait "30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). Once 30 days have elapsed following a request, the petitioner has satisfied this threshold requirement, regardless of whether BOP has issued a decision. *See Reed v. United States*, No. 4:96-cr-22-3, 2024 U.S. Dist. LEXIS 111026, at *7 (E.D. Va. June 24, 2024).

Second, once the court has authority to hear the petitioner's motion, then the court must determine whether the petitioner presents an "extraordinary and compelling" reason for a sentence reduction and whether "such a reduction is consistent with applicable policy statements

3

issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Blancher*, 2025 WL 999856, at *1 (4th Cir. Apr. 3, 2025) (per curiam) (unpublished). The defendant "bears the burden of showing that extraordinary and compelling reasons warrant a sentence reduction." *United States v. Melvin*, 2023 WL 5974872, at *2 (4th Cir. Sept. 14, 2023) (citing *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021)). After amendments made in 2023, the United States Sentencing Guidelines now provide six extraordinary and compelling reasons justifying relief under § 1B1.13: (1) the defendant's medical circumstances, (2) advanced age, (3) family circumstances, (4) whether the defendant is a victim of abuse, (5) "other reasons," and (6) the defendant receiving an unusually long sentence accompanied by a subsequent change in the law which produces gross disparities in sentencing outcomes. *See* U.S.S.G. § 1B1.13(b).

Finally, once a petitioner shows that the Court has the authority to hear his motion and that extraordinary and compelling reasons exist, the Court proceeds to the third step—evaluating whether the § 3553(a) sentencing factors support a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). The movant "bears the burden of showing why the § 3553(a) factors justify a modified sentence." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). "District courts 'enjoy broad discretion' in evaluating the § 3553(a) factors when deciding a motion for compassionate release." *Id.* (quoting *United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022)).

### III. DISCUSSION

**A. The administrative exhaustion requirement is met**

The parties do not dispute that the Defendant has exhausted his administrative remedies. Dkt. 112 at 3 n.1.

**B. The Defendant fails to show extraordinary and compelling reasons for early release**

As noted earlier, the Defendant argues that a combination of several factors provide extraordinary and compelling reasons for early release from incarceration: (1) his deteriorating health; (2) his wife's deteriorating health; (3) the length of time he has already served in federal and state custody, including under pandemic-related restrictions; and (4) his significant rehabilitative efforts. Dkt. 103 at 1-2, 11, 14-21. Each of these reasons is addressed below.

*1. The Defendant's health conditions*

The Defendant first argues that his various medical conditions – hypertension, Type II diabetes, hyperlipidemia, obesity, and degenerative back disease – supports his motion for compassionate release. Dkt. 103 at 14-15. He relies on the Sentencing Commission's policy statement as part of his argument that the conditions are extraordinary and compelling. Dkt. 103 at 14. Specifically, he cites U.S.S.G. § 1B1.13(b)(1)(B)(i), which states that extraordinary and compelling reasons can exist when a defendant suffers from a "serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." He also contends that § 1B1.13(b)(1)(D)(ii) is relevant. This provision applies to a defendant who "due to personal health risk factors and custodial status … is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease" or an "ongoing public health emergency described in clause (i)," which is "an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i).

The Defendant's conditions are serious, but the existing record and the allegations in his

motion do not meet the criteria provided in the Commission's policy statement.

  First, U.S.S.G. § 1B1.13(b)(1)(B)(i) states that a serious medical condition can support an extraordinary or compelling reason for release if the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." The policy statement does not define what constitutes "self-care" but "courts that have examined the issue have required petitioners to show a high level of disability." *United States v. Vaughn*, 2025 WL 84215, at *4 (W.D. Va. Jan. 13, 2025). In *Vaughn*, the Court surveyed relevant case law on "self-care" and offered the following summary:

> For example, in *United States v. Handy*, No. PJM 04-0559, 2020 WL 2041666 (D. Md. April 28, 2020), a district court found that an inmate was unable to provide self-care when he could not walk and was confined to a wheelchair or bed twenty-four hours per day, needed help breaking his food into small pieces, fetching a meal tray, opening packaging, and clipping his toenails due to his right hand being "completely deformed. *Id*. at *4 (internal citations omitted). Conversely, in *United States v. Mattingley*, No. 6:15-cr-00005, 2020 WL 974874 (W.D. Va. Feb. 28, 2020), the court found that a double amputee who required the use of prosthetics to ambulate and who also suffered from phantom pain, a propensity for infection, diabetes, kidney disease, and high blood pressure had not shown that he could no longer provide self-care. *Id*. at *1, 5. In *United States v. Coleman*, No. 3:17-cr-8, 2020 WL 5016967 at *3 (W.D. Va. Aug. 18, 2020), the court found that an inmate with vision loss due to uveitis who could not climb stairs and was limited to a lower bunk did not show his condition was so severe that he could not provide himself with self-care. Similarly, in *United States v. Casey*, No. 1:06-CR-00071, 2019 WL 1987311, at *1 (W.D. Va. May 6, 2019), the court determined that the defendant's limited mobility and inability to climb stairs did not suffice to show to he was unable to engage in self-care. *See also United States v. Clark*, No. 3:13-CR-163-FDW-1, 2019 WL 1052020, at *1 (W.D.N.C. Mar. 5, 2019) ("declining health, diabetes, stage-3 kidney failure, and back issues that require a walker" did not compromise ability to provide self-care).

*Id*. To be sure, the Court does not doubt that the Defendant suffers from chronic illness and that

6

these conditions cause him stress. Dkt. 103 at 15. His motion also states that he experiences excruciating shoulder pain requiring an x-ray (although it is unclear whether this condition was formally diagnosed). *Id*. Nevertheless, he has not demonstrated that his conditions are so severe as to substantially diminish his ability to take care of himself while in federal custody. Unlike the incarcerated individual in *Handy*, the record does not show that the Defendant has significant challenges with mobility, eating his meals, or maintaining personal hygiene. The Defendant has not provided evidence that specifically addresses limitations on his self-care.

Similarly, the Defendant has not presented circumstances that sufficiently tie his health conditions to the threat of infectious disease at his current facility, FCI Butner Low. Under U.S.S.G. § 1B1.13(b)(1)(D), extraordinary and compelling reasons for compassionate release may exist if the Defendant presents the following circumstances:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

The Defendant cites this provision of the policy statement and alleges that his conditions put him at risk of suffering severe health consequences from the COVID-19 pandemic. Dkt. 103 at 14. Still, he fails to present information related to how COVID-19 is specifically affecting FCI Butner Low. He does not describe how Butner is "affected or at imminent risk of being affected by" a COVID-19 outbreak or cite to any "ongoing public health emergency" declared by federal,

7

state, or local officials.³ His motion's discussion of the pandemic's impacts on federal facilities mostly relates to FCI Beckley in West Virginia. Dkt. 103 at 6, 18-20. He was held at Beckley and transferred from Beckley to Butner in November 2023; thus, he was at Butner at the time he filed his motion and remains there today. Dkt. 103 at 4; *Find an inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last accessed Apr. 16, 2025). Moreover, to the extent that the Defendant contends that he is at risk of a COVID-19 infection, the Court stands by its prior holding that his vaccination status removes his "medical conditions" from the category of risk amounting to an "extraordinary and compelling reason" to support compassionate release. Dkt. 96 at 5. His medical conditions – except for his alleged shoulder issue – appear largely the same as those presented in the prior compassionate release motions that the Court resolved in April 2021. *Id.*; Dkt. 80-1 (exhibit to pro se motion containing medical records and his own description of his conditions); Dkt. 86 (sealed medical records submitted as exhibit to Federal Public Defender's compassionate release motion). The Defendant has not presented information that changes the Court's conclusion, nor has he shown that Butner cannot adequately mitigate the risk of severe COVID-19-related medical conditions.

Other aspects of the § 1B1.13 policy statement regarding medical circumstances supporting compassionate release are inapplicable. For example, the Defendant does not report to be suffering from a terminal illness, nor does he allege that he suffers from "a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § § 1B1.13(b)(1)(A) and (C). Instead, the record shows that he is receiving necessary medical care. *See, e.g.*, Dkt. 86,

---

³ The Court takes notice that, at least at the federal level, the Public Health Emergency for COVID-19 expired on May 11, 2023. *See COVID-19 Public Health Emergency*, U.S. DEP'T OF HEALTH & HUMAN SERV., https://www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html (last accessed Apr. 16, 2025).

Dkt. 103 at 5.

In sum, the Defendant's health conditions are serious, yet he has not presented sufficient evidence to show that they rise to the level of extraordinary or compelling circumstances. The Court has insufficient evidence to determine how his conditions substantially diminish his ability to provide self-care while incarcerated. He has also failed to provide information about how his current facility is specifically affected by COVID-19 and unable to mitigate potential risks to him. The Court has been provided with no reason that his current health conditions cannot continue to be managed in prison. *See, e.g., United States v. Ayyad*, 2024 WL 3424083, at *7-8 (D. Md. July 15, 2024) (explaining that serious health conditions that can be managed in prison do not provide an extraordinary and compelling reason for compassionate release); *United States v. Freeman*, 617 F.Supp. 3d 386 (E.D. Va. 2022) ("[C]hronic conditions that can be managed in prison … are not a sufficient basis for compassionate release.") (citations omitted).

*2. The Defendant's spouse's deteriorating health*

The Defendant argues that his wife's deteriorating health supports compassionate release. Dkt. 103 at 15. He states that "[s]he is 50 years of age, has multiple sclerosis, has lost all movement in her extremities, and is losing her speech." *Id*. Around the time he filed his motion in early 2024, the Defendant's wife was "moved from a nursing home in Lynchburg, VA to a nursing home in Roanoke VA." *Id*. at 5. She "requires constant care because she is unable to move her extremities" and the Defendant alleges that his wife "has no other family members able or willing to care for her," making him "the only available family member" able to do so. *Id*. at 16.

Under the § 1B1.13 policy statement, "family circumstances" that provide an extraordinary and compelling reason for compassionate release include when the Defendant's

9

spouse is incapacitated and "the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13(b)(3)(B). Consistent with the defendant's burden to show that compassionate release is warranted, case law suggests that a movant should provide some evidence to substantiate his claims when seeking a reduced sentence on the grounds that he is the only potential caregiver for a family member.[4] *See United States v. Conley*, 2024 WL 3666171, at *1 (4th Cir. Aug. 6, 2024) (per curiam) (unpublished) (explaining that "without evidence substantiating that [the defendant's wife] needs 24-hour care, and that the [defendant's] sons and other family members are unable to provide it, we cannot conclude that the district court clearly erred in finding that [the defendant] is not the only available caretaker."); *see also United States v. Huffman*, 2024 WL 3046412, at *4 (S.D. W.Va. June 18, 2024) ("[the defendant] fails to provide any evidence to show how he would care for his parents, that they require a caretaker, or that he is the only potential caregiver for them. Indeed, he indicates in his brief to the court that they have the option to enter a nursing home, though he fails to suggest whether such a move is imminent."); *Vaughn*, 2025 WL 84215, at *6 (reviewing medical evidence regarding defendant's mother's health conditions and noting that the defendant did not provide evidence about being the only available caregiver for his mother).

Here, the Defendant fails to substantiate his factual allegations regarding his wife's medical conditions and his status as her only available caregiver. He has not submitted medical records, a letter from a doctor, or any other evidence about her condition. Additionally, assuming that she is incapacitated, it is significant that she was receiving care at a Lynchburg nursing home and has been transferred to a Roanoke facility. The Defendant has not shown that he is the

---

[4] In addition to spouses, other "family circumstances" that could provide extraordinary and compelling reasons for a compassionate release motion include the incapacitation of the caregiver of a defendant's minor child and the incapacitation of the defendant's parent when the defendant is the only available caregiver for the parent. U.S.S.G. § 1B1.13(b)(3)(A) and (C).

"*only* available caregiver," U.S.S.G. § 1B1.13(b)(3)(B) (emphasis added) because his own motion essentially concedes she is receiving professional medical care. As the Government notes in its response, the Defendant makes "no suggestion that she is not receiving the care she requires," and he is "necessarily not the *only available* caregiver if his wife is receiving appropriate care at a professional nursing facility." Dkt. 112 at 8 (italics in original).

Additionally, the record shows that the Defendant has several adult relatives, and it is unclear why they are unable to possibly assist in caring for his wife. The Presentence Investigation Report notes that he has two siblings in Rustburg, Virginia, which is in this district. Dkt. 109 at ¶ 35. He also has four daughters (although the Defendant's wife is not the biological mother of his children). *Id*. at ¶ 36. To be sure, the PSR may contain outdated information because it was prepared for the Defendant's sentencing in 2008. Still, his motion and letters submitted in support of his release suggest that he continues to have relatives in the region. For example, his sister, Shanequa T. Franklin, submitted a letter bearing an address in Gladys, Virginia – a community located in this district. Dkt. 103-4. His motion also explains that one of his daughters owns a home in Lynchburg and that if released he would live with her "until he could make arrangements to move closer to his wife, as he ultimately needs to be able to take care of her." Dkt. 103 at 25. To be clear, the Court does not assume that the Defendant's sister and daughter are available to assist with caring for his wife in Roanoke. But the Defendant bears the burden of showing that he is the only available caregiver and does not explain why his family is unable to assist his wife. *See, e.g.,* Vaughn, 2025 WL 84215 at *6 (considering locations of defendant's siblings in assessing defendant's assertion that the was the only available caregiver for his mother); *United States v. Snyder*, 2023 WL 3467221 at *3 (W.D. Va. May 15, 2023) (considering circumstances of family members in assessing defendant's assertion she was only

11

available caregiver for her mother).

Besides the Defendant's conclusory statements that he is the "only available family member" to care for his wife and that his wife "has no other family members able or willing to care for her," Dkt. 103, at 103, there is no evidence that he is his wife's only available caregiver. Accordingly, the Defendant has not set forth extraordinary and compelling circumstances based on his family circumstances.

### 3. The Defendant's completion of his state sentence and half his federal sentence while experiencing pandemic-related restrictions

The Defendant contends that extraordinary and compelling circumstances arise from his completion of both a prior 11-year state sentence and a substantial portion of his 180-month federal sentence, some of which was under harsh pandemic conditions. Dkt. 103 at 16-20. The Defendant ties these factors to § 1B1.13(b)(5), which states that "other reasons" can constitute an extraordinary or compelling circumstance. Dkt. 103 at 19; Dkt. 114 at 2. Such a reason exists when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." *Id*. Paragraphs 1-4 cover circumstances like a defendant's medical conditions, age, family circumstances, and sexual or physical abuse while in custody. U.S.S.G. § 1B1.13(b)(1)-(4). This is a "'catchall' provision" that "preserves the court's broad discretion" to consider what a defendant believes is a extraordinary and compelling reason for his compassionate release. *United States v. Abdi Jama Aqid*, 2024 WL 4793481, at *3 n.4 (E.D. Va. Nov. 14, 2024).

The Court acknowledges that the Defendant has served a significant amount of his

12

federal sentence – about 114 months of his 180-month sentence – but the mere fact that an individual has served much of a lengthy sentence does not constitute an "extraordinary or compelling" reason for compassionate release similar in significance to the circumstances described in § 1B1.13(b)(1)-(4). Incarceration does not approach the gravity of life-threatening or dangerous circumstances like terminal illness or physical and sexual abuse.[5]  The same analysis and conclusion applies to the Defendant's completion of a state sentence.

Nevertheless, the Defendant contends that a two-year portion of his federal sentence during the height of the COVID-19 pandemic was punitive enough that it – in combination with the amount of time he served and his medical conditions – amounts to "extraordinary or compelling" circumstances under § 1B1.13(b)(5). He argues that when he was at FCI Beckley he was in "an almost continuous lockdown." Dkt. 103 at 18. During this period, he alleges that inmates were largely confined to their cells with limited access to programming and phones, social distancing was impossible, visitation was restricted, and medical personnel failed to regularly check inmates' temperatures and to properly test for COVID-19. *Id*. at 5-6, 18. The Defendant contends that his fear was "magnified by the constant threat of catching the virus and getting seriously ill or dying." *Id*. at 103.

Even so, most of the Defendant's arguments about his conditions are largely generalized complaints about how FCI Beckley responded to the pandemic. As another court that recently considered a somewhat similar issue put it, "generalized challenges to [a defendant's] confinement …. do not present grave, individualized circumstances necessary to warrant compassionate release." *United States v. Ware*, 2025 WL 605050, at *3 (S.D. Ga. Feb. 25, 2025).

---

[5] U.S.S.G. § 1B1.13(b)(6) provides certain circumstances under which a defendant's completion of 10 years of an "unusually long sentence" can provide an extraordinary and compelling reason for a reduced sentence. However, the Defendant's motion does not address this provision.

In *Ware*, a defendant argued, among other things, that "shortage of prison staff, lack of prison programming, lockdowns, and increased susceptibility to contracting COVID" entitled him to a sentence reduction under § 1B1.13(b)(5). *Id*. In rejecting his generalized challenges to confinement, the Court explained that he "fails to show that he has borne any burden of imprisonment in a manner that differentiates him from other inmates." *Id*. Courts within this circuit have reached similar conclusions when considering the role of pandemic restrictions in compassionate release requests. *See, e.g.*, *Blackwell v. United States*, 2023 WL 7002560, at *5 (D.S.C. Oct. 24, 2023) (rejecting a defendant's argument that COVID-19-related lockdowns at BOP were an extraordinary and compelling circumstance to warrant compassionate release because he did not show "a confluence of circumstances unique to [his] case"). Here, the Defendant's complaints are not akin to the individualized circumstances enumerated in § 1B1.13(b)(1)-(4) because he fails to allege how COVID-19-related restrictions at Beckley uniquely affected him in a manner distinct from other inmates. To the extent that he contends his medical conditions differentiate him from other inmates, that argument fails because he does not allege that the BOP has failed to treat his specific health conditions. Additionally, as the prior round of compassionate release motions in this case established, he has received appropriate health care – notably, vaccination – to limit his risk of exposure to coronavirus. Dkt. 96. Accordingly, the Defendant has not shown that COVID-19-related prison conditions provide extraordinary and compelling circumstances for compassionate release.[6]

---

[6] The Defendant alleges that he "has experienced frequent lockdowns at the prison unrelated to COVID-19" and that he informed his attorney that at one point "he was locked down for ten straight days for unknown reasons." It is unclear if these allegations are specifically related to the Beckley or Butner facilities. Dkt. 103 at 6. Nevertheless, compassionate release motion is generally not the proper avenue for challenging conditions of confinement compared to a *Bivens* claim or a motion for habeas corpus relief under 28 U.S.C. § 2241. *United States v. Dowell*, 2025 WL 644291, at *3 (W.D. Va. Feb. 27, 2025) (collecting cases about the limited role that compassionate release motions play with respect to complaints about prison conditions).

*4. Rehabilitative efforts*

The Defendant contends that his rehabilitative efforts should be considered in combination with the other circumstances above to support his early release. Dkt. 103 at 20-21. While incarcerated, he has earned several credentials and completed training for various kinds of jobs, such as certified forklift operator, HVAC technician, and vehicle air system technician. *Id*. at 20; Dkt. 103-2. He also participates in volunteer work, such as with Toys for Tots, and has coached basketball, softball, and football. *Id*. He submitted a collection of letters showing that he enjoys significant support from his family. *See generally* Dkts. 103-1 and Dkts. 103-3 to 103-6. One of his sisters, for example, writes that her brother "is a changed man." Dkt. 103-4 at 1.

Under the § 1B1.13 policy statement, "rehabilitation of the defendant is *not, by itself, an extraordinary and compelling reason for purposes of this policy statement*." § 1B1.13(d) (italics added); *see also* 28 U.S.C. § 994(t). Still, "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." § 1B1.13(d).

As discussed above, none of the Defendant's other justifications for his early release as presented in his motion — his health conditions, his desire to care for his ailing wife, and his length of incarceration, including under pandemic restrictions — provide extraordinary and compelling reasons to reduce his sentence. The Court reaches this conclusion whether his alleged circumstances are considered individually or in combination. Thus, at this time, the Defendant has not shown that he is entitled to compassionate release on a ground other than rehabilitation.

While the Defendant concedes that rehabilitation, by itself, is not an extraordinary and compelling reason for sentence reduction, he asks the Court to consider his rehabilitative efforts in combination with other circumstances, particularly (1) the length of time he has been

15

incarcerated and (2) the pandemic restrictions he endured. Dkt. 114 at 2. But those two factors, as he has presented them, fall well below the threshold of extraordinary and compelling circumstances. Adding the Defendant's rehabilitative efforts into the equation does not tip the scales toward finding an extraordinary or compelling circumstance that supports compassionate release. Accordingly, the Defendant has not shown that his rehabilitative efforts – even when considered in combination with other circumstances described in his motion – provides an extraordinary and compelling reason to reduce his sentence.

\*\*\*

The Defendant's allegations fail to clear the threshold of showing that extraordinary and compelling reasons exist for a sentence reduction. He contends that his health conditions diminish his ability to provide self-care yet provides no explanation or evidence about how that is the case. Similarly, he argues that his health conditions place him at increased risk of complications or death from COVID-19, but fails to explain how the pandemic affects the facility where he is currently held and how it would be unable to adequately manage such risk. He requests that his sentence be reduced because he is his wife's only caregiver, but he does not provide the Court with evidence of her medical conditions, nor does he adequately explain or substantiate how he is the only individual who would be able to provide her care. (To the contrary, his motion explains that she receives professional care at a nursing home.) He contends that the amount of time he has served for state and federal sentences, including two years under harsh pandemic restrictions, is an extraordinary and compelling circumstance. However, his generalized complaints about prison conditions fail to explain how the defendant experienced circumstances distinct from other inmates. Even when these conditions are considered in conjunction with the time he has served, the Court is not persuaded that they approach the

gravity of circumstances outlined in U.S.S.G. § 1B1.13(b)(1)-(4). Finally, even when his various allegations are viewed collectively and considered in combination with evidence of the Defendant's rehabilitation, they still do not make out an extraordinary and compelling reason for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

### C. The Court need not consider the Section 3553(a) factors

Because the Defendant fails to allege facts sufficient to constitute a compelling and extraordinary circumstance, the Court will not address the § 3553(a) factors. *See United States v. Malone*, 57 F.4th 167, 174 (4th Cir. 2023) ("[I]f the district court has determined that the defendant's § 3582(c)(1)(A) motion has demonstrated extraordinary and compelling reasons for release, it must then turn to the relevant sentencing factors set forth in § 3553(a) 'to the extent ... they are applicable.'"); *United States v. Bethea*, 54 F.4th 826, 833 (4th Cir. 2022) (describing the "extraordinary and compelling" reasons for relief as a threshold for eligibility).

### CONCLUSION

The Defendant fails to allege facts that show extraordinary and compelling reasons warrant a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). Accordingly, his motion is denied. The Court will enter an accompanying order.

Entered this 17th day of April, 2025.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE